UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DUSTIN SWANDA, and                                    Civil No. 10-970 (MJD/JSM)
MALONNIE SWANDA-MORRISON,

    Plaintiffs,                                     REPORT AND RECOMMENDATION

v.

JOHN CHOI, INDIVIDUALLY & OFFICIALLY,
MINNESOTA DEPARTMENT OF PUBLIC SAFETY,
MINNESOTA STATE PATROL,
RAMSEY COUNTY AND COUNTY ATTORNEY'S OFFICE,
BRYAN BEARCE, INDIVIDUALLY & IN HIS OFFICIAL CAPACITY, and
SARAH LEWIS, INDIVIDUALLY & IN HER OFFICIAL CAPACITY,

    Defendants.

JANIE S. MAYERON, United States Magistrate Judge

    The above matter is before the undersigned on defendants Ramsey County, the Ramsey County Attorney's Office, John Choi, and Sarah Lewis's Motion to Dismiss or in the Alternative, for Summary Judgment [Docket No. 69].[1]  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

---

[1]  Defendants Minnesota State Patrol, Minnesota Department of Public Safety and Trooper Bryan Bearce (collectively, the "State defendants") also filed a Motion to Dismiss or in the Alternative, for Summary Judgment [Docket No. 77].  However, on July 20, 2012, plaintiff Dustin Swanda filed a letter with the Court stating that the case had been settled by agreement between plaintiffs and the State defendants [Docket No. 90].  An identical letter signed by plaintiff Malonnie Swanda-Morrison was filed on July 24, 2012 [Docket No. 91].  In light of these notifications, plaintiffs and the State defendants have been directed to file a Stipulation of Dismissal with the Clerk of Court and Chief Judge Michael J. Davis by August 3, 2012, disposing of this matter [Docket No. 92].  Accordingly, this Court only addresses the motion filed by defendants Ramsey County, Ramsey County Attorney's Office, John Choi, and Sarah Lewis (collectively, the "Ramsey County defendants").

I.      **BACKGROUND**

A.      **Swanda's Arrest and Forfeiture of Vehicle and Cash**

Plaintiff Dustin Swanda is a resident of the State of Minnesota, currently incarcerated at the United States Penitentiary, Atwater, California.  Amended Complaint II, p. 2, ¶2 [Docket No. 57].[2]  Swanda was sentenced on November 12, 2009, to 151 months in prison for conspiracy to distribute 50 grams or more of "actual" methamphetamine in violation of 42 U.S.C. § 841(a)(1), (b)(1)(A) and § 846 following his plea of guilty to that charge.  Affidavit of Marsha Eldot Devine [Docket No. 81], Ex. A (Affidavit of Kent O'Grady[3] in Support of Defendant Minnesota State Patrol's Motion to Dismiss or in the Alternative for Summary Judgment) ("O'Grady Aff.") Ex. C (sentencing transcript); Ex. D (Judgment in a Criminal Case).

Plaintiff Malonnie Swanda-Morrison is a resident of the State of Minnesota. Swanda-Morrison is Swanda's mother and was the registered owner of the 2001 Cadillac Seville that plaintiffs claim was improperly seized and sold by the Minnesota State Patrol.  Amended Complaint II, p. 7, ¶1.

The relevant facts bearing on this suit are as follows: On February 17, 2009, at 11:45 p.m., State Trooper Bryan Bearce stopped Swanda on Interstate Highway 35E, near State Highway 13 in St. Paul.  Affidavit of Bryan Bearce ("Bearce Aff."), Ex. A

---

[2]      This case has a very complex procedural history, described by the Court in its Order of January 24, 2012 [Docket No. 67].  Suffice it to say, many versions of what the Court thought was Swanda's Complaint have been filed.  The pleading referenced in this decision as "Amended Complaint II" [Docket No. 57] is the definitive version of the Complaint to which the defendants have responded by filing dispositive motions.

[3]      O'Grady is a "Major and is employed as the Director of Operations Support Services for the Minnesota State Patrol, a division of the Minnesota Department of Transportation."  O'Grady Aff., ¶1.

[Docket No. 80] (field report of Bryan Bearce dated February 17, 2009), p. 2.  According to Trooper Bearce's field report, Swanda was travelling 80 miles per hour in a 45 mile per hour zone.  Id.  Swanda was driving the Cadillac at issue in this lawsuit when Trooper Bearce stopped him.  Id.  Swanda told Trooper Bearce that his mother owned the car and that he had about $5000 in it.  Id.  Trooper Bearce recovered from the Cadillac a plastic bag containing approximately one gram of a white powdery substance, a plastic bag containing what he believed was marijuana, and $6,614 in cash from the center console.  Id., p. 3.  Swanda had an additional $1,950 in his pants pocket, for a total of $8,564.00 found during the stop.  Id.  Trooper Bearce arrested Swanda and transported him to the Ramsey County jail.  Id.  Swanda was charged with Possession of a Controlled Substance in the Fifth Degree in violation of Minn. Stat. § 152.025(2)(1).   O'Grady Aff., Ex. G, p. 1 (Minnesota Courts Information System Register of Actions).  The Ramsey County Attorney's office eventually dismissed this charge because Swanda was already in federal custody, serving his sentence.  Id. at 2.[4]

Following Swanda's arrest on February 17, 2009, the Minnesota State Patrol sought administrative forfeiture under Minnesota state law of the money and the Cadillac that Swanda was driving at the time of his arrest.  Trooper Bearce gave Swanda a Notice of Seizure and Intent to Forfeit Property/Controlled Substance Crime for the $8,564.00 cash and the Cadillac ("Notice") when he was booked into the

---

[4]      The federal indictment charged Swanda with distribution of methamphetamine "on or about" February 19, 2008, July 5, 2008 and July 25, 2008.  O'Grady Aff., Ex. A (Federal Indictment in Criminal Case No. 09-51, United States District Court, District of Minnesota)  Neither party submitted any evidence that Swanda's arrest on February 17, 2009, was related to his conviction on the federal offense.

Ramsey County jail.[5]  Bearce Aff. ¶¶10-12, 16, Ex. B.  Although Trooper Bearce could not recall the exact manner in which he served the Notice on Swanda, he stated that the copy of the Notice that the State Patrol had submitted in connection with its motion was a true and correct copy of the Notice he gave to Swanda, and that it was his signature on the Certificate of Service.  Id., ¶13.  The Notice had an acknowledgment, intended to be signed by the person upon whom the Notice is served.  Id., Ex. B.  The acknowledgement was unsigned, but Trooper Bearce checked a box indicating "recipient refused to sign."  Id.  Swanda disavowed ever receiving the Notice.  Amended Complaint II, p. 3, ¶6; p. 7, ¶2.

The State Patrol also served a forfeiture notice on Christopher Roub, who it believed at the time was the Cadillac's owner.  O'Grady Aff., ¶2.  Although Swanda informed Trooper Bearce that Swanda-Morrison owned the vehicle, and Trooper Bearce recorded this on his Field Report (Bearce Aff., Ex. A), Swanda-Morrison was never served with a forfeiture notice.  Affidavit of Malonnie Swanda-Morrison ("Swanda-

---

[5]     Pursuant to Minn. Stat. § 609.5314, subd. 1, money and "conveyance devices containing controlled substances with a retail value of $100 or more if possession or sale of the controlled substance would be a felony under Chapter 152" are subject to administrative forfeiture.  A "conveyance device" includes, but is not limited to, a motor vehicle.  Minn. Stat. § 609.531, subd. 1(a)(2009); Blanche v. 1995 Pontiac Grand Prix (VIN: 162WJ12M95F268403), 599 N.W.2d 161, 163 (Minn. 1999).  Forfeiture under Minn. Stat. § 609.531 et. seq. is a civil in rem action, independent of criminal prosecution.  Minn. Stat. § 609.531, subd. 6a(a).  Property that has been used to facilitate drug trafficking or represents the proceeds from drug trafficking may be forfeited.  Minn. Stat. § 609.5311, subd. 2(a), 4(b).  The statute creates an evidentiary presumption that cash and "conveyance devices" found in proximity to controlled substances are subject to administrative forfeiture.  Minn. Stat. § 609.5314, subd. 1(a)1(i), subd. 1(a)(2).  The property claimant bears the burden of rebutting this presumption.  Minn. Stat. § 609.5314, subd. 1(c).  Once the claimant meets his or her burden of proof regarding the rebuttable presumption, the burden shifts to the prosecuting authority to prove by clear and convincing evidence that the property was connected to drug trafficking.  Minn. Stat. § 609.531, subd. 6a(a).

Morrison Aff.") ¶¶1, 2, 4 [Docket No. 15].[6]  Apparently, Swanda-Morrison purchased the vehicle on January 21, 2009, and the Minnesota motor vehicle title was transferred on January 29, 2009.  O'Grady Aff., ¶10.  However, the Department of Motor Vehicle records did not reflect the transfer of title when Swanda was arrested.  Affidavit of Sarah Lewis ("Lewis Aff."), Ex. 3 (printout provided by the State Patrol listing Christopher Roub as the registered owner of the 2001 Cadillac Seville) [Docket No. 76].  Plaintiffs claimed that while Swanda-Morrison was the registered owner of the Cadillac, Swanda jointly owned the car with her and that he has buying it from her on "a payment plan."  Amended Complaint II, p. 7-8, ¶¶3, 5.  Plaintiffs also alleged that the money found in the car belonged to Swanda-Morrison.  Id., pp. 7-8, ¶¶1, 4.

The forfeiture of the Cadillac and money was processed by Ramsey County employee Sarah Lewis.  Lewis is a paralegal who has worked for the Ramsey County Attorney's office for seventeen years and manages approximately 500 to 600 administrative and judicial forfeitures each year, of which approximately 75% involve controlled substances.  Lewis Aff., ¶¶3. 4, 8-13.  According to Lewis, in February 2009, she received an administrative forfeiture file from the Minnesota State Patrol for the February 18, 2009 seizure of $8,564 and a 2001 Cadillac Seville.  Id., ¶5.  Lewis reported that she is able to determine, based on her knowledge and experience, whether a forfeiture file contains all of the necessary documentation and if there is information lacking, she is authorized to reject the file and return the paperwork to the

---

[6]     The State Patrol stated that it later discovered that Roub was not the owner of the 2001 Cadillac on February 18, 2009.  O'Grady Aff., ¶10.  According to O'Grady, a subsequent Minnesota Motor Vehicle title examination in May, 2010, revealed that the car had been sold by Roub to Malonnie Swanda-Morrison on January 21, 2009, and title was transferred to her on January 29, 2009.  Id.

originating agency. Id., ¶6. Lewis stated that according to her knowledge and experience, 1.47 grams of methamphetamine is worth in excess of $100. Id., ¶7.

Lewis reviewed the paperwork associated with Swanda's arrest, including the computer printout listing the registered owner of the car as Christopher Roub and copies of the certificates of service to Roub and Swanda, to determine if the file contained the requisite paperwork to proceed with the forfeiture of the cash and car. Id., ¶8. After concluding that the forfeiture file was complete, Lewis was responsible for holding the file open for at least sixty days to allow for demands for a judicial determination of the forfeiture. Id., ¶10. Lewis waited longer than the required sixty days and then sent a disposition letter to the State Patrol indicating that the Ramsey County Attorney's office had not received any complaints contesting the forfeiture of the cash or vehicle. Id., ¶11. Lewis provided the State Patrol with the documentation it needed to transfer title to the car. Id., ¶12.

On July 13, 2009, almost five months after the seizure, the Ramsey County Attorney's office notified the State Patrol that no one had contested the forfeiture within the 60 days allowed by statute and that the Cadillac could be sold at auction and the currency and proceeds of sale could be distributed. Lewis Aff., ¶¶ 11, 12; O'Grady Aff., Exs. E, F.[7] (Memoranda from Ramsey County Attorney's Office to the East Metro State Patrol, dated July 13, 2009). Consequently, 70% of the currency was distributed to the East Metro State Patrol, 20% to the Ramsey County Attorney's office, and 10% to the State of Minnesota. O'Grady Aff., Exs. E, F. The Cadillac was sold at auction and the

---

[7]   Forfeiture of property is automatic unless the party on whom the notice is served demands a judicial determination of the matter within 60 days of the date the Notice is served. The demand is in the form of a civil complaint, filed in the county in which the property was seized. Minn. Stat. § 609.5314, subd. 3.

proceeds distributed in the same <u>pro rata</u> share.   O'Grady Aff., ¶8.   These <u>pro rata</u> distributions are dictated by Minn. Stat. § 609.5315, subd. 5.

The Ramsey County defendants relied on an affidavit by Terri Vandergriff. Affidavit of Terri E. Vandergriff ("Vandergriff Aff.") [Docket No. 35].   Vandergriff is the Special Agent in Charge of the Special Investigative Unit (narcotics unit) at the Minnesota Bureau of Criminal Apprehension ("BCA").   <u>Id.</u>, ¶1.   Vandergriff has worked in law enforcement for 33 years, including nine years in a patrol position and two years with the Richfield Police narcotics unit.   <u>Id.</u>   For the previous 22 years Vandergriff was an agent with the BCA and worked that entire time in the Special Investigative Unit.   <u>Id.</u> Vandergriff stated that "in February 2009, one gram of methamphetamine had a retail value of approximately $100.   One and forty-seven one-hundredths grams of methamphetamine would have had a retail value in excess of $100, and would have been worth closer to $150.00."   <u>Id.</u>, ¶3.

## B.  <u>Amended Complaint II</u>

In the Amended Complaint II, plaintiffs alleged that defendants' actions violated plaintiffs' rights under the 4th, 5th, 8th, and 14th Amendments because Swanda did not sign the notice of forfeiture, the notice of forfeiture was not served on Swanda-Morrison, and the controlled substance was not of sufficient quantity or value to allow for forfeiture under the administrative forfeiture law.   Amended Complaint II, pp. 3-7; 8-9, ¶1. Further, plaintiffs alleged that the Ramsey County defendants were not entitled to qualified immunity for their actions.   <u>Id.</u>, p. 10, ¶¶5-7.   Plaintiffs also claimed that

Swanda-Morrison was entitled to compensation for the loss of use of her property in addition to the value of the property seized.[8] Id., p. 12.

The Ramsey County defendants moved to dismiss the Amended Complaint II or, alternatively, for summary judgment.  Ramsey County Defendants' Motion to Dismiss or In the Alternative for Summary Judgment  [Docket No. 69].  In support, the Ramsey County defendants argued that summary judgment or dismissal was appropriate because: (1) Ramsey County Attorney John Choi cannot be sued in his individual capacity as he did not work for Ramsey County at the time of the forfeiture; (2) plaintiffs have not raised any facts to challenge the forfeiture of the cash as improper; (3) the Ramsey County defendants did not deprive plaintiffs of any property; (4) even if the Ramsey County defendants were involved in the deprivation of plaintiffs' property, they did so lawfully; (5) claims against Lewis and Choi in their individual capacities must be dismissed as they are entitled to qualified immunity; and (6) claims against Lewis and Choi their official capacity fail for lack of evidence of custom or practice of forfeiting property in disregard for state law or policy.[9]   Ramsey County Defendants'

---

[8]    Plaintiffs sought judgment as a matter of law and summary judgment in their Amended Complaint II.  Amended Complaint II, p. 12, ¶¶ 1, 3.  The Court will not entertain plaintiffs' request because it is not properly before it and was not properly presented to defendants as required by Local Rule 7.1(b) (requiring the moving party to file and serve several documents for dispositive motions, including a motion, a memorandum of law supporting the motion, and affidavits and exhibits.)

[9]    In their Reply Motion, the Ramsey County defendants raised for the first time that Swanda lacked standing to assert a due process claim as to the Cadillac.  Ramsey County Defendants' Reply Memorandum in Support of their Motion to Dismiss, or in the Alternative, for Summary Judgment ("County Def. Reply"), p. 3-4 [Docket No. 89].  This Court will not entertain an argument that was not raised in the initial papers filed by the Ramsey County defendants and for which plaintiffs have had no opportunity to address. See Nielsen v. United States Bureau of Land Mgmt., 252 F.R.D. 499, 528 n.15 (D. Minn. 2008) (citing Simon v. Yecke, Civ. No. 03–6500 (JNE/JGL), 2004 WL 3739590 at

Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment ("County Def. Mem."), pp. 2-3 [Docket No. 71].

Plaintiffs Swanda and Swanda-Morrison[10] each responded to the Ramsey County defendants' motion, arguing that dismissal or summary judgment was inappropriate.  Swanda's Reply to Motion to Dismiss ("Swanda Opp. Mem.") [Docket No 87]; Swanda-Morrison's Reply to Motion to Dismiss ("Swanda-Morrison Opp. Mem.") [Docket No. 85].   In general, Swanda restated the allegations in the Amended Complaint II and objected to Lewis's reliance on her experience to determine the value of the drugs seized from the car.  Swanda Opp. Mem., p. 3.  According to Swanda, for the forfeiture to be constitutionally sound, the defendants had a duty to "prove" that the substance seized was worth $100 and that it was, in fact, a "controlled substance."  Id., p. 1.  Swanda also submitted that "defendants" "rushed" the forfeiture process and in doing so failed to properly check with the DMV regarding ownership of the Cadillac.  Id., p. 2.  Further, the fact that Swanda pled "not guilty" to the drug charge should have placed Lewis on notice that Ramsey County should have tested in a forensics lab the substance seized from the Cadillac because a field test would not have been sufficient to convict him of the drug charges "beyond a reasonable doubt."  Id., pp. 2-3.

Swanda further argued that the County's "practice" of relying on Lewis, combined

_____

*4 n.4 (D. Minn. June 1, 2004) (noting that "it is improper to bring wholly new arguments in a Memorandum in Reply")).

[10]     The Ramsey County defendants question whether Swanda-Morrison was responsible for the preparation, signature and filing of her responsive brief as it was sent from federal prison in California and the signatures on the certificate of service [Docket No. 83-1] and brief [Docket No. 85] do not match the previous signatures by Swanda-Morrison on the Amended Complaint II or the copy of the Cadillac's title signed by Swanda-Morrison [Docket No. 52-1].  See County Def. Reply, p. 7 n.1.

with its failure to routinely check the DMV records, yielded a forfeiture process that was constitutionally faulty.  Id., p. 3.

Swanda-Morrison similarly challenged Lewis's ability to determine the value of the drugs and the affidavit of Terri Vandergriff submitted in connection with the County's motion to dismiss.  Swanda-Morrison Opp. Mem., p. 1.  According to Swanda-Morrison, the Lewis and Vandergriff affidavits, submitted two years after the fact, are insufficient to establish the retail value of the methamphetamine, if that is what the substance was, and do not justify Lewis's actions in connection with the forfeiture.  Id., p. 2.

## II.   STANDARD OF REVIEW

The Ramsey County defendants moved to dismiss plaintiffs' Amended Complaint II or alternatively, for summary judgment.  Where, as here, the Ramsey County defendants submitted the Vandergriff and Lewis affidavits in support of their motion and the Court has also considered the affidavits of Kent O'Grady and Bryan Bearce in deciding the motion, the Court applies the summary judgment standard to defendants' motions.  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) ("We have previously held that 'Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'  Such 'matters outside the pleadings' include both statements of counsel at oral argument raising new facts not alleged in the pleadings', and 'any written or oral evidence in support of or in opposition

to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings.'" (internal citations omitted)).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

If the moving party carries its burden, the nonmoving party must point to specific facts in the record that create a genuine issue for trial, but may not "rest on mere allegations or denials." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleading…"). The non-moving party must "substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. International Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

## III.    DISCUSSION

Underlying plaintiffs' suit against the Ramsey County defendants is plaintiffs' contention that the administrative forfeiture of the car and currency was invalid on the following grounds: (1) plaintiffs jointly owned the car; (2) Swanda was not given sufficient notice that the car and $1,950.00 was subject to forfeiture (Amended Complaint II, p. 3, ¶6; p. 7, ¶2)[11]; and (3) Swanda-Morrison was not given notice of the

---

[11]    The issue of whether Swanda was given notice of the forfeiture is no longer before this Court as the claim was directed to the State Troopers who served the forfeiture notice on Swanda and Christopher Roub, and not the Ramsey County defendants. Nevertheless, the Court observes that no facts were presented by plaintiffs

to support a claim that Swanda was not given the notice required by law.  The relevant portions of Minn. Stat. § 609.5314, subd. 2(a) and (b) governing the seizure of the car and money provide:

> (a) Forfeiture of property described in subdivision 1 is governed by this subdivision. When seizure occurs, or within a reasonable time after that, all persons known to have an ownership, possessory, or security interest in seized property must be notified of the seizure and the intent to forfeit the property. In the case of a motor vehicle required to be registered under chapter 168, notice mailed by certified mail to the address shown in Department of Public Safety records is deemed sufficient notice to the registered owner. The notification to a person known to have a security interest in seized property required under this paragraph applies only to motor vehicles required to be registered under chapter 168 and only if the security interest is listed on the vehicle's title.

> (b) Notice may otherwise be given in the manner provided by law for service of a summons in a civil action. The notice must be in writing and contain:

>> (1) a description of the property seized;

>> (2) the date of seizure;

>> (3) notice of the right to obtain judicial review of the forfeiture and of the procedure for obtaining judicial review.

***

The Minnesota Rules of Civil Procedure govern service of summons in a civil action. Pursuant to Rule 4, service of a summons in a civil complaint may be made by any person, not a party to the action, who is over eighteen years old.  Personal service may be made upon an individual by "delivering a copy to the individual personally."  Minn. R. Civ. P. 4.03.  There is no requirement that the individual personally served acknowledge service.  Service "shall be proved by the certificate of the sheriff or other peace officer making it . . . failure to make proof of service shall not affect the validity of the service." Minn. R. Civ. P. 4.06.

Swanda did not dispute that Trooper Bearce signed the certificate of service accompanying the Notice.  Bearce Aff., ¶5; Plaintiff's Declaration of Disputed Material Facts ("Pl. Decl.") ¶¶1-6 [Docket No. 16].  The Notice described the property to be seized, the date of the seizure and the procedure for demanding a judicial review of the seizure.  Bearce Aff., Ex. B.  It is undisputed that Swanda did not timely contest the

administrative forfeiture the car and the remaining $6,614.00, which she claimed belonged to her. Id., pp. 7-8, ¶¶1, 4. Even if true,[12] for the reasons discussed below, plaintiffs' claims against these defendants fail as a matter of law and summary judgment should be granted.

### A. All Claims Against Ramsey County Attorney John Choi Fail as a Matter of Law

As an initial matter, plaintiffs' claims against Ramsey County Attorney John Choi, in his individual capacity, cannot proceed. Swanda was arrested on February 17, 2009, and the forfeiture action was commenced that day. Bearce Aff., ¶2, 10. The forfeiture was completed by August, 2009. O'Grady Aff., Exs. E and F. Choi was elected as Ramsey County Attorney in November, 2010, and was not employed by Ramsey County before that date. http://www.co.ramsey.mn.us/attorney/johnsbio.htm.

---

seizure. Rather, Swanda claims that because he did not sign the Notice, that was his way of communicating that he was contesting and implicitly seeking review of the forfeiture. Amended Complaint II, p. 11 ("review of the forfeiture was implied by the alleged refusal to admit or sign the 'intent to forfeit' [notice].").

As a matter of law, Swanda was given sufficient notice that the Cadillac and all of the currency found in the car and on his person was subject to forfeiture and plaintiffs did not present any facts to the contrary.

[12] The Ramsey County defendants noted that Swanda and Swanda-Morrison have been inconsistent in their descriptions of who owned the Cadillac throughout this case. For example, in a June 14, 2010, affidavit Swanda stated that "I purchased the 2001 Cadillac with proceeds that [I] lawfully acquired" and that Swanda-Morrision "did not have any interest in interest or ownership in the vehicle." County Def. Mem., p. 3, n.2 (citing Affidavit of Dustin Swanda, [Docket No. 14]). Swanda-Morrison submitted an affidavit stating that "the 2001 Cadillac was purchased by my son and belonged to him as an owner while I agreed to register the vehicle in my name." Id. (citing Affidavit of Malonnie Swanda-Morrison, [Docket No. 15]). In his February 28, 2011, Motion to Amend [Docket No. 26], Swanda stated that "although the vehicle is registered to Plaintiff Morrison. . ., both mother and son share the vehicle." Id. While this Court has substantial doubts about the truth of plaintiffs' claims that that car is jointly owned and the $6,614.000 belonged to Swanda-Morrison and not Swanda, for the purpose of this Report and Recommendation, the Court accepts plaintiffs' current version of the facts.

Defendant Choi, in his official or individual capacity, had no connection or relation to the forfeiture and consequently, no claim against him can survive. Summary judgment should be granted in Choi's favor.

**B.    The Ramsey County Defendants Did not Deprive the Plaintiffs of Any Property**

Minnesota Statute § 609.5315, subd. 1, provides that the appropriate agency shall sell property that is not required to be destroyed by law and is not harmful to the public. The statute also specifies the distribution of proceeds from the sale of forfeited property. Minn. Stat. § 609.5315, subd. 5. Further, an administrative forfeiture becomes effective upon the "commission of the act or omission giving rise to the forfeiture" when "[a]ll right, title, and interest in the property subject to forfeiture under sections 609.531 to 609.5318 vests in the appropriate agency"[13] and "is deemed to be in the custody of the appropriate agency." Minn. Stat. § 609.531, subd. 5.

In this case, the "right, title, and interest" in the Cadillac and cash found in the car and on Swanda vested in the appropriate agency, the Minnesota State Patrol, and not any of the Ramsey County defendants, on February 17, 2009, when Swanda was arrested for possession of methamphetamine by Trooper Bearce.[14]

---

[13]    For the purposes of Minn. Stat. §§ 609.531 to 609.5318, "'appropriate agency' means the Bureau of Criminal Apprehension, the Department of Commerce Division of Insurance Fraud Prevention, the Minnesota Division of Driver and Vehicle Services, the Minnesota State Patrol, a county sheriff's department, the Three Rivers Park District park rangers, the Department of Natural Resources Division of Enforcement, the University of Minnesota Police Department, the Department of Corrections Fugitive Apprehension Unit, a city, metropolitan transit, or airport police department; or a multijurisdictional entity established under section 299A.642 or 299A.681." Minn. Stat. § 609.531, subd. 1, (emphasis added).

[14]    Minn. Stat. § 609.531, subd., 4, allows for seizure of property "without process if: (1) the seizure is incident to a lawful arrest or search." However, this is modified by the requirements of Minn. Stat. § 609.1534, which require that notice be provided for

The Ramsey County defendants, specifically the Ramsey County Attorney's Office, Ramsey County Attorney John Choi, and paralegal Sarah Lewis, are not an "appropriate agency" under Minn. Stat. § 609.5314, and thus, had no property interest, or even a possessory interest, in Swanda-Morrison's vehicle or the cash.  Rather, the Ramsey County defendants were the "prosecuting authority" for the purpose of "prosecuting an offense that is the basis for a forfeiture under sections 609.531 to 609.5318."[15]  Minn. Stat. § 609.531, subd. 1.  As the prosecuting authority that handled the forfeiture process, the County was entitled to twenty percent of the proceeds of the money and from the sale of the vehicle.  See Minn. Stat. § 609.5315, subd. 5.[16]  The Minnesota State Patrol was the agency that had a vested ownership and possessory interest in the vehicle and money seized for the purposes of administrative forfeiture. The Minnesota State Patrol was also responsible for selling the vehicle.  Minn.Stat. § 169A.63, subd. 10.

While Ramsey County processed the forfeiture of Swanda-Morrison's vehicle and received a portion of the proceeds from the sale, that does not lead to the conclusion

---

forfeiture in connection with a controlled substances crime.  In this case, plaintiffs' alleged due process violation arose when Swanda-Morrison was not served notice that her vehicle was subject to forfeiture.

[15]     Swanda was originally charged with Possession of a Controlled Substance in the Fifth Degree in violation of Minn. Stat. § 152.025(2)(1).  O'Grady Aff., Ex. G, p. 1 (Minnesota Courts Information Systems Register of Actions).  This charge would have been prosecuted by the Ramsey County Attorney's Office, but, the Ramsey County Attorney's office eventually dismissed the charge.  A conviction is not necessary for an administrative forfeiture.  See Minn. Stat. § 609.5314.

[16]     Pursuant to Minn. Stat. § 609.5315, subd. 5a(2), "20 percent of the money or proceeds must be forwarded to the county attorney or other prosecuting agency that handled the forfeiture for deposit as a supplement to its operating fund or similar fund for prosecutorial purposes."

that Ramsey County, or any of the Ramsey County defendants, deprived Swanda-Morrison of any property.  See Ashanti v. City of Golden Valley, Civ. No. 10-2121 (PJS/JJG) 2011 WL 1114320 (D. Minn. Mar. 24, 2011).  In Ashanti, the Minnesota State Patrol seized and sought forfeiture of a vehicle in connection with the arrest of an impaired driver, pursuant to Minn. Stat. § 169A.63.[17]  Id. at *1.  After the arrest, the Minnesota State Patrol sought administrative forfeiture of the vehicle.  The vehicle belonged to the driver's mother who was served notice of the forfeiture by both the Minnesota State Patrol and a private attorney acting as Golden Valley's municipal prosecutor.  Id. at *4.  The mother challenged the forfeiture and prevailed, but then sued Golden Valley and the attorney employed by Golden Valley for violations of her Constitutional rights.  Id.

The court held that Golden Valley and the attorney employed by Golden Valley did not do anything to deprive the plaintiff of a constitutionally protected interest.  Id. at *5.  Golden Valley did not seize any of the plaintiff's property.  Id.  Golden Valley was the prosecuting authority under the applicable forfeiture statute and the Minnesota State Patrol was the appropriate agency to conduct the forfeiture.  Id.  The statute vested the right, title and interest in the vehicle in the appropriate agency, and the appropriate agency was charged with selling or disposing of the property.  Id.  Although under the forfeiture statute Golden Valley received a percentage of the proceeds from any sale of

---

[17]    Minn. Stat. §§ 609.5314 and 169A.63 are very similar statutes.  Although the vehicle was seized under § 609.5314, not § 169A.63, both relate to the forfeiture of property involved in the commission of certain designated offenses and have much of the same language and procedure within.    Minn. Stat. § 169A.63 allows for administrative forfeiture of property associated with a charge of driving while impaired, while Minn. Stat § 609.5314 involves controlled substances offenses.  Despite different prerequisite offenses, both statutes provide the opportunity and procedure for administrative forfeiture and cases involving § 169A.63 are informative when considering a forfeiture arising under § 609.5314.

the forfeited property, the court determined that this arrangement was no different than a fee arrangement between a private client and its counsel, which does not make counsel responsible for the actions of the client.   Id. ("In effect, if the prosecuting authority represents the appropriate agency in a forfeiture proceeding, then the prosecuting authority may be compensated for providing that representation through a statutorily established contingent-fee arrangement. This contingent-fee arrangement does not make the prosecuting authority (here, Golden Valley) responsible for the actions of its client (here, the Minnesota State Patrol), any more than a contingent-fee arrangement between a private client and its counsel would make counsel responsible for the private client's actions.")   Because "Golden Valley did not deprive Ashanti of property at all, it did not deprive her of property without due process." Id. at *4.

Similarly, the Ramsey County defendants did not seize plaintiffs' property,[18] did not possess plaintiffs' property, were not responsible for giving plaintiffs notice of the forfeiture, and did not initiate any action against them.   In short, the Ramsey County defendants did not deprive plaintiffs of their property and therefore did not deprive them of property without due process of law.   Ramsey County and its employees were the prosecuting authority in this case and simply processed the forfeiture for the Minnesota State Patrol.   Ramsey County was compensated for its involvement in the forfeiture as directed by statute, but never gained an ownership or possessory interest in the vehicle.

---

[18]    For this same reason, any purported claim by plaintiffs under the Fourth Amendment fails, as the Ramsey County defendants did not "seize" any property from plaintiffs.

On this basis, the Ramsey County defendants' motion for summary judgment should be granted.[19]

**C.    Plaintiffs' Claims Against the Ramsey County Defendants in their Official Capacities Fail as a Matter of Law**

Plaintiffs sued Ramsey County, the Ramsey County Attorney's Office, Sarah Lewis and John Choi.  Suits against government employees in their official capacities are actually suits against the government entity itself.  Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).  Therefore, the claims against Lewis and Choi are actually against Ramsey County, as are those against the Ramsey County Attorney's Office.[20]

To succeed on claims against the government entity (i.e., Ramsey County), plaintiffs must allege facts that demonstrate that the government entity had a policy or custom that led to the violation of the plaintiff's Constitutional rights.  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978).  Plaintiffs who seek to impose liability on local governments "must prove that action pursuant to official municipal policy caused their injury.  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and

---

[19]    This conclusion alone is sufficient to grant the Ramsey County defendants summary judgment.  However, for completeness, this Court also addresses the additional grounds submitted by the Ramsey County defendants in support of their motion for summary judgment.

[20]    The Ramsey County Attorney's Office is a division of Ramsey County.  The Ramsey County Attorney is an elected official directed by statute to, among other duties, appear in all cases in which the county is a party, give opinions and advice to the county board or any county office, and prosecute felonies.  Minn. Stat. § 388.051.  In this case, the suit against the Ramsey County Attorney and the Ramsey County Attorney's Office is a suit against the state.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but is rather a suit against the official's office.  As such, it is no different from a suit against the state itself") (citations and quotation omitted).

widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations and quotations omitted).

Although plaintiffs claim that the Ramsey County defendants acted with a "consistent custom" of resolving administrative forfeiture cases in favor of forfeiture (Amended Complaint II, pp. 4-5, ¶21[21]), Lewis "had a custom" of accepting as true the information in the Notice of Forfeiture (Id., p. 4 ¶11), and she "used an unwritten 'Policy' [sic] of guessing" the value of controlled substances (Amended Complaint II, p. 4, ¶12), these conclusory statements are not supported by any facts in the Amended Complaint II. See Ashcroft v. Iqbal, 556 U.S. 662, 578 (2009) (a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Likewise, there is nothing in the record to lead to the conclusion that Ramsey County had a policy or custom of violating citizens' rights during forfeiture actions. Plaintiffs have simply alleged a single set of violations relating to this single forfeiture action. As such, the claims against the Ramsey County defendants in their official capacities cannot survive and their motion for summary judgment should be granted.

### D.    Plaintiffs' Claims Against Lewis in her Individual Capacity Fail

Plaintiffs sued Lewis in her individual capacity. In response, the Ramsey County defendants sought to invoke qualified immunity to shield Lewis from any personal liability.[22] County Def. Mem., p. 14-15.

---

[21]    The paragraph and page numbering of plaintiffs' Amended Complaint II is incorrect at pages 4 and 5. Paragraph 21, which begins at the end of page 5 of the Amended Complaint II, continues on page 4.

[22]    The Ramsey County defendants also made the same argument as to Ramsey County Attorney John Choi. As discussed above, claims against Choi in his individual

The doctrine of qualified immunity provides that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." Conrad v. Davis, 120 F.3d 92, 95 (8th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)).  Qualified immunity is generally limited to actions that are discretionary and provides "that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." Hassan v. City of Minneapolis, Minn., 489 F.3d 914, 920 (8th Cir. 2007) (quoting Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn.1988)).   An employee is not entitled to qualified immunity when the employee's actions are ministerial, that is, when the law directs the "precise action that the official must take in each instance." Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984).

To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." Burke v. Sullivan, 677 F.3d 367, 371 (8th Cir. 2012) (quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir.2009)).   Whether an official may be held personally liable for an alleged unlawful action depends on the "objective legal reasonableness of the action." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow, 457 U.S. at 819).   Additionally, the "clearly established" right must be defined at a sufficient level of particularity such that the "contours of the

---

capacity fail because he was not employed by the County at the time of the forfeiture. See Section III(A), supra.  In any event, he too would be entitled to qualified immunity for the same reasons as Lewis.

right must be sufficiently clear that a reasonable official would understand what he is doing violates this right."[23]  Id. at 640.

Lewis is entitled to qualified immunity.   Lewis exercises discretion when reviewing forfeiture actions.  Based on her professional experience and judgment, she determines whether the documentation submitted constitutes an appropriate basis for an administrative forfeiture and has the discretion and authority to process or reject a forfeiture request.   Lewis Aff., ¶6.   In addition to her discretionary actions, Lewis's actions were objectively reasonable when she processed the forfeiture of the Cadillac and there is no evidence to suggest otherwise.

Lewis manages "approximately 500-600" forfeitures a year.  Id., ¶4.  The record shows that she processed this request like all the others, even waiting substantially beyond the required 60 days to report to the Minnesota State Patrol that the forfeiture had not been contested.  Id., ¶11.  Further, Lewis had the right to rely on the paperwork submitted to her by the State Patrol.   The paperwork forwarded to Ramsey County included Trooper Bearce's notice to Swanda regarding the seizure of the cash in connection with the drugs, the Crime Laboratory report of the St. Paul Police Department indicating the drugs seized were methamphetamine, and the DMV printout

---

[23]     The Supreme Court specifically addressed the right to due process in Anderson, stating that "the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.   Much the same could be said of any other constitutional or statutory violation.   But if the test of 'clearly established law' were to be applied at this level of generality… [p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." 483 U.S. at 639.   Thus, the Supreme Court concluded, the right must be defined "in a more particularized, and hence more relevant, sense."  Id. at 640.

showing Roub as the registered owner of the Cadillac in which the cash and drugs were found.   Lewis Aff., ¶14, Exs. 1-3.   Lewis's affidavit established that she has the experience to estimate the retail value of the drugs seized and that the value of 1.47 grams of methamphetamine was in excess of $100  (Lewis Aff., ¶7), and her statements regarding the value of the drugs were further supported by Vandergriff's affidavit.[24] Vandergriff Aff., ¶3.   There is no basis to find that Lewis acted unreasonably while performing her discretionary actions related to the forfeiture.   Accordingly, Lewis is entitled to qualified immunity and summary judgment in her favor should be granted.

### E.   Plaintiffs Failed Produce Any Facts to Support that the Cash Seized Belonged to Swanda-Morrison

All $8,564.00 seized in the traffic stop was forfeited under Minn. Stat. § 609.5413, which provides a presumption that all money found in proximity to a

---

[24]    Plaintiffs claim that the Ramsey County defendants have not established that the drugs found in the car was methamphetamine or that it had a retail value of $100 or more, finds no evidentiary support in the record.   All the evidence supports the conclusion that the controlled substance was methamphetamine with a retail value of at least $100.   The St. Paul Police Department Criminal Laboratory Report indicated that the substance tested positive for methamphetamine.   Lewis. Aff., Ex. 1 [Docket No. 76]. See State v. Knoch, 781 N.W.2d 170 (Minn. Ct. App. 2010) (holding that a positive field test of a controlled substance could support a criminal charge).   Lewis stated that based on her twenty-six years of experience as a paralegal managing 500-600 forfeitures per year, 75% of which involve controlled substances, the 1.47 grams of methamphetamine was worth more than $100.   Lewis Aff. ¶¶3, 4, 7.   Lewis's statement was supported by the affidavit of Terri Vandergriff, the Special Agent in Charge of the Special Investigative Unit (narcotics unit) at the Minnesota Bureau of Criminal Apprehension, who had extensive background in narcotics investigations.   Vandergriff Aff., ¶1.   Vandergriff stated that "in February 2009, one gram of methamphetamine had a retail value of approximately $100.   One and forty-seven one-hundredths grams of methamphetamine would have had a retail value in excess of $100, and would have been worth closer to $150.00." Id. at ¶3.   Plaintiffs presented no evidence to dispute the crime lab's test, nor they have presented any evidence or factual basis challenging the retail value of the methamphetamine.

controlled substance is subject to forfeiture.  Here, the currency was found in proximity to methamphetamine.[25]

Plaintiffs now claim that the $6,614.00 found in the center console of the Cadillac belonged to Swanda-Morrison, not Swanda.  Amended Complaint II, p. 7, ¶1.  Swanda-Morrison was not served the requisite notice to initiate administrative forfeiture, and thus the $6,614.00 was improperly forfeited.  Id., p. 7-8, ¶¶1, 4.  The Court finds this claim to meritless.

Plaintiffs have not presented any facts to show that the currency belonged to Swanda-Morrison.  The only references in the Amended Complaint II are conclusory statements that "Malonnie Swanda-Morrison was and is the true registered owner of the car and the cash found in that car. . . ."  Amended Complaint II, p. 7, ¶1.  [T]he cash belonging to Malonnie Morrison [sic] which was in the console of the car.  A total of $6,614.00 dollars [sic] was locked in her console" (Id., pp. 7-8), and "[Swanda-Morrison] is the undisputed true owner of . . .  the $6,614.00 U.S. currency found in her cars [sic] consol [sic] . . . ." Id., p. 11.

To survive the Ramsey County defendant's motion on this issue, Swanda-Morrison was obligated to "'present more than a scintilla of evidence…and advance specific facts to create a genuine issue of material fact.'"  Questar Data Sys., Inc. v. Service Mgmt. Group, 502 F. Supp. 2d 960, 965 (D. Minn. 2007) (quoting FDIC v. Bell, 106 F.3d 258, 263 (8th Cir. 1997)).  She failed to do so.  In reviewing the entire record, this Court can find no facts supporting that the money forfeited belonged to Swanda-

---

[25]   Methamphetamine is a controlled substance.  See Minn. Stat. § 152.02, subd. 3.

CASE 0:10-cv-00970-MJD-JSM   Document 93   Filed 08/03/12   Page 24 of 25

Morrison rather than Swanda. Therefore summary judgment on these claims is appropriate. [26]

## IV.   **RECOMMENDATION**

For the reasons set forth above, IT IS RECOMMENDED THAT:

---

[26]     As for plaintiffs' allegations that the forfeiture somehow violated their Fourth and Eighth Amendment rights, none of the parties referenced these claims in their submissions in connection with the Ramsey County defendants' motion. The Court notes that the only mention to the Eighth Amendment is found in the opening paragraph of the Amended Complaint II. Amended Complaint II, p. 1. The Eighth Amendment prohibits excessive fines, excessive bail, and cruel and unusual punishment. A forfeiture violates the Eighth Amendment "if it is grossly disproportionate to the gravity of the defendant's offense." United States v. Bajakajian, 524 U.S. 321, 336-37 (1998) There is no factual support for plaintiffs' claim regarding the Eighth Amendment; it is simply a legal conclusion. Further, because the Ramsey County defendants did not seize any of plaintiffs' property, an Eighth Amendment claim cannot stand against the Ramsey County defendants.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV.

> A traffic stop constitutes a seizure for Fourth Amendment purposes. To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, a reasonable, articulable suspicion that criminal activity is occurring. A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement.

United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (quotations and citations omitted). "Even if [the officer was] mistaken about the existence of a violation, 'the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances.'" United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005) (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir.2005)). Plaintiffs have not alleged or presented any facts to show a constitutional violation related to the stop. See United States v. $231,930 in United States Currency, 614 F.3d 837, 842 (8th Cir. 2010) (any traffic violation, however minor provides probable cause for a traffic stop.) (citing United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004)). At any rate, as stated previously, (n. 18 supra), plaintiffs could not make out a Fourth Amendment claim against the Ramsey County defendants because they did not stop Swanda or seize the vehicle and cash.

Ramsey County, the Ramsey County Attorney's Office, John Choi, and Sarah Lewis's Motion to Dismiss or in the Alternative, for Summary Judgment [Docket No. 69] be **GRANTED** and the suit against them be dismissed with prejudice**.**

Dated: August 3, 2012

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## Notice

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 17, 2012, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.